IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 3, 2025

IN RE ZANIYAH C.[1] ET AL.

Appeal from the Juvenile Court for Knox County
No. 47JC1-2024-JT-120    Timothy E. Irwin, Judge

_____

No. E2025-00568-COA-R3-PT
_____

A mother appeals a juvenile court judgment terminating the mother's parental rights to three minor children. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Christine L. Dummer, Knoxville, Tennessee, for the appellant, Katelynn C.

Jonathan Skrmetti, Attorney General and Reporter, and Allen T. Martin, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**BACKGROUND**

Katelynn C. (the "Mother") is mother to Aziah C., Damari C., and Zaniyah C. (together, the "Children").[2] The Children have an older sibling who does not reside with Mother and is not at issue in this case, and the family has a history with the Tennessee Department of Children's Services ("DCS"). DCS received a referral in 2021 regarding Mother's older child, alleging that Mother smoked marijuana around that child. This

_____

[1] This Court has a policy of abbreviating the last names of children and other parties in cases involving termination of parental rights to protect their privacy and identities.

[2] Aziah and Damari have the same biological father, while Zaniyah has a different father. The fathers are mentioned for context, but their parental rights are not at issue in this appeal.

occurred when Mother was pregnant with the twins, Aziah and Damari. When the twins were approximately five months old, Damari was taken to the hospital with serious injuries. Doctors determined that Mother's boyfriend at the time, Zaniyah's biological father, Jacob B., shook Damari while Mother was not in the home.[3] Jacob B. told DCS that Damari would not stop crying while Jacob B. tried to watch a Titans football game. Jacob B. is currently incarcerated due to this incident.

DCS received the referral giving rise to this case in March of 2023 when the twins were almost two years old and Zaniyah was almost one. The referral provided that the Children were exposed to drugs in Mother's home and that Mother frequently left them alone and unsupervised. A DCS caseworker visited Mother's home on March 13, 2023, and observed old food and garbage strewn throughout the apartment within the Children's reach. The caseworker performed a drug screen for Mother, and Mother tested positive for THC and cocaine. Mother admitted to the caseworker that she smoked marijuana the day prior and used cocaine a few weeks earlier. DCS and Mother entered into an "immediate protection agreement," and DCS placed the Children in a relative's home. This agreement allowed Mother supervised visitation but no overnight visitation.

On May 3, 2023, DCS filed a petition in the Juvenile Court for Knox County (the "juvenile court" or "the trial court") for temporary legal custody of the Children and to establish that the Children were dependent and neglected. The juvenile court entered a protective custody order the same day, finding probable cause to believe the Children were dependent and neglected in Mother's care. Pursuant to a preliminary hearing order, Mother was allowed supervised visitation with the Children. The juvenile court adjudicated the Children dependent and neglected in an order entered September 8, 2023. This order provides that Mother stipulated to the dependency and neglect finding.

Mother and DCS entered into the first family permanency plan on June 23, 2023. Mother participated in creating the plan which required Mother to, among other things, complete a mental health assessment and follow recommendations, complete parenting classes, complete an alcohol and drug assessment and follow recommendations, remain sober, and maintain consistent visitation with the Children. The parties agree that Mother completed some permanency plan tasks. For example, Mother completed parenting classes and had a job at a restaurant by the time of trial. She also had an apartment with beds for all three Children, as well as a driver's license. Mother visited the Children during the custodial period.

Nonetheless, sobriety remained Mother's biggest barrier to reunification. Although Mother passed several drug screens during the custodial period, she was not consistent.

---

[3] The record suggests that the incident involving Damari being shaken occurred on or about October 31, 2021, although the exact date is not entirely clear.

Mother tested positive for THC and cocaine when the Children entered DCS custody and tested positive for the same substances in October 2023 and March 2024. Mother tested negative for all substances in July and August of 2024 but was then positive for cocaine, methamphetamine, and fentanyl in September of 2024. The DCS caseworker who testified at trial confirmed that during some interactions with Mother in August of 2024, the caseworker became concerned that Mother was under the influence of drugs. Mother completed intensive outpatient therapy and individual therapy during the custodial period but then relapsed.

DCS filed its petition to terminate Mother's parental rights on November 12, 2024. For statutory grounds, DCS alleged abandonment by failure to establish a suitable home, substantial noncompliance with the permanency plan, persistent conditions, and failure to manifest an ability and willingness to assume custody of the Children. DCS also alleged that termination would be in the Children's best interests, particularly due to the Children's specialized medical needs.[4] The trial court held a final hearing on March 18, 2025, at which Mother, the Children's caseworker, and the Children's foster mother ("Foster Mother") all testified. At the time of trial, Mother was participating in a new outpatient program through the Helen Ross McNabb Center and had been in that program for eight days.

The trial court ruled orally at the end of the hearing, finding that DCS proved all of its alleged statutory grounds for termination by clear and convincing evidence. The trial court also found that termination would be in the Children's best interests. The trial court entered a written final order on April 15, 2025, and Mother filed a timely notice of appeal to this Court.

## ISSUES

On appeal, Mother challenges the trial court's ruling as to all grounds for termination, as well as the conclusion that termination is in the Children's best interests. DCS raises no additional issues in its posture as appellee.

## STANDARD OF REVIEW

"A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (citing Tenn. Code Ann. § 36-1-113(c)). "Because of the profound consequences of a decision to terminate parental rights, a petitioner must prove both elements of termination by clear and convincing

---

[4] The record provides that Zaniyah is autistic, although no party offered medical proof establishing this fact at trial. The parties also agree that Damari has developmental delays.

evidence." *In re Markus E.*, 671 S.W.3d 437, 456 (Tenn. 2023). This heightened burden "minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016) (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)).

As our Supreme Court recently explained, we employ a two-step process in reviewing termination cases:

> To review trial court decisions, appellate courts use a [] two-step process, to accommodate both Rule 13(d) of the Tennessee Rules of Appellate Procedure and the statutory clear and convincing standard. First, appellate courts review each of the trial court's specific factual findings de novo under Rule 13(d), presuming each finding to be correct unless the evidence preponderates against it. *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); *In re Justice A.F.*, [No. W2011-02520-COA-R3-PT,] 2012 WL 4340709, at *7 [(Tenn. Ct. App. Sept. 24, 2012)]. When a trial court's factual finding is based on its assessment of a witness's credibility, appellate courts afford great weight to that determination and will not reverse it absent clear evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re Justice A.F.*, 2012 WL 4340709, at *7 (citing *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005)).

> Second, appellate courts determine whether the combination of all of the individual underlying facts, in the aggregate, constitutes clear and convincing evidence. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re Justice A.F.*, 2012 WL 4340709, at *7. Whether the aggregate of the individual facts, either as found by the trial court or supported by a preponderance of the evidence, amounts to clear and convincing evidence is a question of law, subject to de novo review with no presumption of correctness. *See In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *see also In re Samaria S.*, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011). As usual, the appellate court reviews all other conclusions of law de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)].

*In re Markus E.*, 671 S.W.3d at 457.

DISCUSSION

To terminate a person's parental rights, a petitioner must establish at least one statutory ground for termination and that termination serves the child's best interests. Tenn. Code Ann. § 36-1-113(c). Thus, we begin with the statutory grounds for termination.

*Grounds for termination*

The first ground the trial court considered was abandonment by failure to provide a suitable home, which occurs when:

(*a*) The child has been removed from the home or the physical or legal custody of a parent or parents or guardian or guardians by a court order at any stage of proceedings in which a child is alleged to be a dependent and neglected child, and the child was placed in the custody of the department or a licensed child-placing agency;

(*b*) The juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and

(*c*) For a period of four (4) months following the physical removal, the department or agency made reasonable efforts to assist the parent or parents or the guardian or guardians to establish a suitable home for the child, but that the parent or parents or the guardian or guardians have not made reciprocal reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child shall be found to be reasonable if such efforts equal or exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department[.]

Tenn. Code Ann. § 36-1-102(1)(A)(ii)(*a*)-(*c*) (effective July 1, 2024 to May 4, 2025).[5]

---

[5] In termination cases, we apply the version of the statute in effect at the time the petition was filed. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

With this ground, we "consider[] whether a child has a suitable home to return to after the child's court-ordered removal from the parent." *In re Adaleigh M.*, No. E2019-01955-COA-R3-PT, 2021 WL 1219818, at *3 (Tenn. Ct. App. Mar. 31, 2021). A suitable home requires "more than a proper physical living location." *In re Daniel B.*, No. E2019-01063-COA-R3-PT, 2020 WL 3955703, at *4 (Tenn. Ct. App. July 10, 2020) (quoting *Tenn. Dep't of Children's Servs. v. C.W.*, No. E2007-00561-COA-R3-PT, 2007 WL 4207941, at *3 (Tenn. Ct. App. Nov. 29, 2007)). A suitable home entails "[a]ppropriate care and attention" for the child and "must be free from drugs." *In re Matthew T.*, No. M2015-00486-COA-R3-PT, 2016 WL 1621076, at *7 (Tenn. Ct. App. Apr. 20, 2016) (citing *In re Hannah H.*, No. E2013-01211-COA-R3-PT, 2014 WL 2587397, at *9 (Tenn. Ct. App. June 10, 2014)). DCS should utilize its superior resources in assisting with the establishment of a suitable home, but "[its] efforts do not need to be 'Herculean.'" *In re Jamarcus K.*, No. M2021-01171-COA-R3-PT, 2022 WL 3755383, at *8 (Tenn. Ct. App. Aug. 30, 2022) (quoting *In re Hannah H.*, 2014 WL 2587397, at *9). Sole responsibility does not lie with DCS, and "[p]arents must also make reasonable efforts towards achieving the goals established by the permanency plan to remedy the conditions leading to the removal of the child." *Id.*

With regard to this ground, the juvenile court found that "during the relevant four-month period of July 5, 2024, to November 5, 2024, [Mother] made no reasonable efforts to provide a suitable home. Instead, [Mother] failed multiple drug screens and continued to use illegal drugs." The juvenile court further found that "[Mother's] failure to make even minimal efforts to improve her home and personal circumstances demonstrates a lack of concern for the children to such a degree that it appears unlikely that she will be able to provide a suitable home for the children at an early date." On appeal, Mother argues that DCS did not sufficiently assist Mother in establishing a suitable home. Mother points to the DCS caseworker's trial testimony that the caseworker waited several months to follow up with Mother's intensive outpatient program provider. The relevant testimony is as follows:

A. [DCS] made a referral, and [Mother] went to the Next Steps to do an A&D assessment, a new one, and they recommended IOP. She went an[d] did the intake at the end of May of 2024, beginning of June of 2024. There were some insurance issues, but Mom worked with the provider. They resolved that pretty quickly. They were waiting on a class to start. They reported that Mom last checked in with them July 1st of 2024, to see if the class had started.

I reached out later on, probably around October of 2024, to see what kind of communication they'd had, and they had asked if Mom had gotten a new phone number, which she had. So I gave them the contact information. They contacted Mom to set up IOP. Mom told them that she would not be

- 6 -

able to do the IOP program due to conflict with her children's therapy. And they asked her if there was any way that she could move that around. They were willing to work with her. And then Mom stated that she was just going to go to Helen Ross McNabb and do their IOP program.

Q. Okay. So after she failed her drug screen, you set up another A&D assessment, and that A&D assessment made recommendations that she did not complete?

A. Correct.

The foregoing exchange does not establish a fatal failure on DCS's part. The caseworker followed up within approximately three months of Mother's last contact with the provider and furnished Mother's contact information. At a different point in her testimony, the caseworker also discussed the fact that during Mother's first IOP program, Mother experienced transportation issues and was thus switched to a different provider. Accordingly, the record suggests that DCS's efforts at least matched those of Mother. DCS's efforts need not be Herculean but must only equal or exceed Mother's efforts. Tenn. Code Ann. § 36-1-102(1)(A)(ii)(c); *In re Jamarcus K.*, 2022 WL 3755383, at *8. While DCS can facilitate drug treatment, it cannot ultimately force a parent to remain drug-free.

In that vein, it is undisputed that Mother failed drug screens throughout the custodial period. A caseworker visited Mother's apartment in 2025 to conduct a home visit and encountered a man smoking marijuana in the apartment. Mother was not home. This occurred only one month before trial, and when questioned about this incident at trial, Mother did not deny it. Mother also testified at trial that she believed her positive drug screens were due to exposure from other people:

Q. How do you explain the failed -- if you know, how do you explain any of the other failed drug screens?

A. The only way I can explain that is through exposure. I haven't took anything. I haven't done nothing.

Q. You heard [the DCS caseworker's] testimony --

THE COURT: Who's exposing you to fentanyl?

A. I don't know.

THE COURT: Well, when have you been around fentanyl to be exposed to it?

- 7 -

A. I do not know.

Q. If you were to have your children with you, how would you ensure that they would not be exposed to fentanyl?

A. I -- whatever I can.

Mother's testimony is underwhelming. DCS encountered Mother's friend smoking marijuana in her home only one month before trial, and Mother's answers regarding drug use were flippant. Even crediting Mother's testimony that she is not using illegal substances and is merely exposing herself to same, logic dictates that the Children would also be exposed. This Court consistently holds that a suitable home is one that is free from drugs. *See, e.g.*, *In re Micah N.*, No. M2024-01297-COA-R3-PT, 2025 WL 2556543, at *5 (Tenn. Ct. App. Sept. 5, 2025); *In re Gabriel T.*, No. M2024-00486-COA-R3-PT, 2025 WL 794457, at *10 (Tenn. Ct. App. Mar. 13, 2025), *no perm. app. filed*; *see also In re Santana M.*, No. W2024-00740-COA-R3-PT, 2024 WL 5040483, at *7 (Tenn. Ct. App. Dec. 9, 2024) ("[A] parent's compliance with counseling and other requirements to address conditions that impact the care and safety of the child are related to the establishment of a suitable home for the child." (quoting *In re A'ziya G.*, No. M2022-01282-COA-R3-PT, 2023 WL 2997968 at *8 (Tenn. Ct. App. Apr. 19, 2023))), *no perm. app. filed*. Even to the extent Mother is not using drugs, she is allowing individuals in her home to do so. Thus, the home is not suitable either way. Given the foregoing, we affirm the trial court's conclusion that DCS proved abandonment by failure to provide a suitable home by clear and convincing evidence.

The additional grounds the juvenile court found for terminating Mother's parental rights are 1) substantial noncompliance with the permanency plan; 2) persistent conditions; and 3) failure to manifest an ability and willingness to assume custody of the Children. "As instructed by *In re Carrington H.*, we have likewise reviewed the [j]uvenile [c]ourt's findings as to each of these additional grounds as found by the [j]uvenile [c]ourt." *In re Meadow L.*, No. E2024-01425-COA-R3-PT, 2025 WL 1779767, at *13 (Tenn. Ct. App. June 24, 2025), *no perm. app. filed*. The underlying problem regarding these grounds, as found by the juvenile court, is Mother's sobriety, the fact that she failed drug screens leading up to trial, and the fact that Mother allowed her friend to smoke marijuana in her home shortly before trial. *See* Tenn. Code Ann. § 36-1-113(g) (noting that "listing conditions, acts or omissions in one ground does not prevent them from coming within another ground"). Moreover, Mother's testimony does not inspire confidence that she understands the problems with her behavior and can correct same. Accordingly, "[t]he evidence does not preponderate against the [j]uvenile [c]ourt's findings relevant to [the additional] grounds. Each of these additional grounds was proven by clear and convincing evidence, and we affirm the [j]uvenile [c]ourt's judgment as to these grounds." *In re Meadow L.*, 2025 WL 1779767, at *13.

- 8 -

*Best interests*

In addition to proving at least one statutory ground for termination, DCS must prove by clear and convincing evidence that the Children's best interests are served by terminating Mother's parental rights. Tenn. Code Ann. § 36-1-113(c). Indeed, "a finding of unfitness does not necessarily require that the parent's rights be terminated." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 193 (Tenn. Ct. App. 2004)). Our termination statutes recognize that "[n]ot all parental misconduct is irredeemable" and that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* As such, the focus of the best interests analysis is not the parent but rather the child. *Id.*; *see also White*, 171 S.W.3d at 194 ("[A] child's best interests must be viewed from the child's, rather than the parent's, perspective.").

When determining whether termination is in a child's best interests, we refer to twenty non-exclusive factors found at Tennessee Code Annotated section 36-1-113(i)(1) (effective July 1, 2024 to June 30, 2025). The juvenile court applied the relevant statutory factors as follows:

> 46. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(A) is applicable in this matter. Thus, the Court finds it is in the best interest of the minor children for termination to be granted as to [Mother], in that termination of parental rights will have a positive impact on the [C]hildren's critical need for stability and continuity of placement throughout the [C]hildren's minority. The [C]hildren need to know where they are going to spend their nights until they are eighteen. The [C]hildren need to know how their life is going to go and that they are going to get what they need. The [C]hildren do not need to worry about drug exposure. The [C]hildren are in a good placement and that is where they need to stay. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.
>
> 47. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(B) is applicable in this matter. Thus, the Court finds that it is in the [C]hildren's best interest for termination to be granted as to [Mother], in that a change of caregivers and physical environment from the [C]hildren's current placement would likely have a negative effect on the [C]hildren's emotional, psychological and/or medical condition. The [C]hildren are receiving the therapies and treatments they need to address their developmental delays. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

48. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(C) is applicable in this matter. Thus, the Court finds that it is in the [C]hildren's best interest for termination to be granted as to [Mother], in that [Mother] has not demonstrated continuity and stability in meeting the [C]hildren's basic material, educational, housing and safety needs. [Mother] has attended multiple appointments to learn what the [C]hildren need but she has not demonstrated continuity and stability in meeting the [C]hildren's needs because of her drug use. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

49. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(D) does not weigh in favor of termination. The Court finds that there is some parental attachment.

50. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(E) does not weigh in favor of termination. The Court finds that [Mother] has visited the [C]hildren and has cultivated some level of positive parental relationship.

51. The Court finds that the best interest factor [] contained in T.C.A. § 36-1-113(i)(1)(F) is not applicable in this matter. There is no evidence related to this factor.

52. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(G) is not applicable in this matter. The Court does not have enough evidence that [Mother], her home, or others in her home would trigger or exacerbate the [C]hildren's experience of trauma or post-traumatic symptoms.

53. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(H) is applicable in this matter. Thus, the Court finds [] that it is in the [C]hildren's best interest for termination to be granted as to [Mother] because the [C]hildren have created a healthy parental attachment with another person or persons in the absence of the parents. The [C]hildren have a healthy parental attachment with their foster parents. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

54. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(I) is applicable in this matter. Thus, the Court finds [] that it is in the [C]hildren's best interest for termination to be granted as to [Mother], because the [C]hildren have emotionally significant relationships

with persons other than parents and caregivers, including biological or foster siblings, and will not have a negative impact [on] the [C]hildren's access to information about the [C]hildren's heritage. The [C]hildren have relationships with the extended foster family and friends. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

55. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(J) is applicable in this matter. Thus, the Court finds that [it] is in the [C]hildren's best interest for termination to be granted as to [Mother], because there is criminal activity in the parent's home or because the parent uses alcohol, controlled substances and/or controlled substance analogues which render the parent unable to consistently care for the [C]hildren in a safe and stable manner. [Mother] has continued to use illegal substances and continued to test positive for drugs. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

56. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(K) is applicable in this matter. Thus, the Court finds that [it] is in the [C]hildren's best interest for termination to be granted as to [Mother], because the parent has not taken advantage of available programs, services, or community resources to assist her in making a lasting adjustment of circumstances, conduct, and conditions. [Mother] has attempted to take advantage of some programs or services but she has not made a lasting adjustment of circumstances, conduct, and conditions. The Court cannot find that [Mother] has made any adjustment in circumstances. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

57. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(L) is applicable in this matter. Thus, the Court finds that it is in the [C]hildren's best interest for termination to be granted as to [Mother] because the Department has made reasonable efforts to assist the parent in making a lasting adjustment in her conduct or circumstances, but, despite these efforts, the parent has [] not made a lasting change in her conduct or lifestyle. The Department made referrals and appointments for treatment. Despite the Department's reasonable efforts, she has failed to make a change in her conduct. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

58. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(M) is applicable in this matter. Thus, the Court finds that it

is in the [C]hildren's best interest for termination to be granted as to [Mother] because she has not demonstrated a sense of urgency in addressing the circumstances, conduct, or conditions that made an award of custody unsafe and not in the [C]hildren's best interest. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

59. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(N) is not applicable in this matter. The Court does not have evidence to support this factor.

60. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(O) is not applicable in this matter. The Court does not have enough evidence to rule on this factor.

61. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(P) is not applicable in this matter and does not weigh in favor of terminating [Mother's] parental rights. The Court finds that [Mother] has been to enough appointments to understand what the [C]hildren need to thrive.

62. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(Q) is applicable in this matter. Thus, the Court finds that it is in the [C]hildren's best interest for termination to be granted as to [Mother], because the parent has failed to demonstrate the ability and commitment to creating and maintaining a home that meets the [C]hildren's basic and specific needs and in which the [C]hildren can thrive. [Mother] does not have the ability or commitment to create and maintain a home that meets the [C]hildren's needs because of [sic] her home is not drug free. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

63. The Court finds that the best interest factor contained T.C.A. § 36-1-113(i)(1)(R) is applicable in this matter. Thus, the Court finds that it is in the [C]hildren's best interest for termination to be granted as to [Mother], in that the physical environment of [Mother's] home is not healthy or safe for the [C]hildren. [Mother] continues to engage in substance abuse and has other people in her home using drugs. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

64. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(S) is applicable in this matter. Thus, the Court finds that it is in the [C]hildren's best interest for termination to be granted as to

[Mother], because the parent has failed to consistently provide more than token financial support for the [C]hildren. [Mother] has paid some child support but the Court cannot find that she has paid more than token support since the [C]hildren entered foster care. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

65. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(T) is applicable in this matter. Thus, the Court finds that it is in the [C]hildren's best interest for termination to be granted as to [Mother], because the mental or emotional fitness of the parent would be detrimental to the [C]hildren and prevent the parent from consistently and effectively providing safe and stable care and supervision of the [C]hildren. [Mother's] drug use impairs her mental and emotional fitness. [Mother] has not done a great job of even caring for herself while her [C]hildren have been in foster care. Her mental and emotional fitness would be detrimental to the [C]hildren because of her drug use. Thus, the Court finds that this factor weighs in favor of terminating [Mother's] parental rights.

Having reviewed the record and the trial court's ruling, we conclude that the record preponderates in favor of the juvenile court's factual findings as to best interests. Moreover, the aggregate of these facts amounts to clear and convincing evidence that termination is in the Children's best interests. Per the Foster Mother's testimony, the Children are stable and thriving in a pre-adoptive home. They are bonded to Foster Mother's biological son as well as her extended family. The Children are receiving the various therapies they need to address their developmental delays. Importantly, and as the trial court aptly noted, Mother's home is simply not safe or appropriate for the Children. Mother continues to abuse illegal substances, as do those in her company. The trial court correctly determined that termination, under these circumstances, is in the Children's best interests.

## CONCLUSION

The judgment of the Juvenile Court for Knox County is affirmed. Costs on appeal are assessed to the appellant, Katelynn C., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE